UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE STEVEN MONTGOMERY, | No. 2:22-cv-00127-DAD-EFB (PC) |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| J. MORENO, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  ECF No. 22.  Pursuant to 28 U.S.C. § 1915A(a), the court previously determined that plaintiff's second amended complaint (SAC) alleged potentially cognizable Eighth Amendment deliberate indifference claims against defendants S. Kirkendall-Cooper[1] (licensed vocational nurse) and S. Wong (primary care physician), who were employed at Mule Creek State Prison (MCSP).  ECF Nos. 25, 26.  Defendants now move for summary judgment under Rule 56.  ECF No. 45.  Plaintiff has responded, ECF No. 51, and defendants have replied, ECF No. 52.

The SAC

Allegations Against Kirkendall-Cooper.  The SAC alleges that plaintiff was working in the MCSP kitchen on February 12, 2020 when he slipped on food spillage while serving pots and

---

[1] Plaintiff refers to this defendant as "K. Kirkendall."  But the court refers to her as she has identified herself in her declaration: "S. Kirkendall-Cooper."  ECF No. 45-5 at 1.

1

pans, fell, and injured himself. ECF No. 22 at 4. A corrections officer (LaMott) called the medical clinic to inform persons there of the injury. Another inmate (Hightower) wheeled plaintiff to the clinic because plaintiff could not walk there on his own. *Id*. The clinic was closed, but Kirkendall-Cooper answered plaintiff's yelling and informed him there was no doctor on duty. *Id*. at 5. Plaintiff told Kirkendall-Cooper he was in severe pain. *Id*. Plaintiff became verbally belligerent in insisting that he needed to see a doctor. *Id*.; *see also* ECF No. 45-1 at 7 n.1 (citing excerpts from plaintiff's deposition). Kirkendall-Cooper assessed that plaintiff's injuries did not appear to be serious enough to need a doctor, and she gave plaintiff two acetaminophen[2] and a health care service request form 7362. ECF No. 22 at 4. Plaintiff alleges that defendant Kirkendall-Cooper failed to treat plaintiff or document any of these events and caused a substantial delay of plaintiff seeing a doctor for treatment until February 27, 2020, fifteen days after the accident. *Id*. at 6.

Allegations Against Wong. Plaintiff alleges that he submitted multiple requests before seeing defendant Dr. Wong on February 27, 2020. *Id*. at 6-7. Plaintiff claims that he continued to suffer pain and mental anguish and informed Wong that he was still unable to perform his job duties. *Id*. He requested a replacement back brace, a wheelchair or walker for mobility assistance, stronger pain medication, and physical therapy. *Id*. Wong did not provide these, but he did refer plaintiff for an X-ray and gave him a seven-day lay-in until March 7, 2020. *Id*. Plaintiff submitted additional requests for physician care, but he received no further physician visits at MCSP. *Id*.

Allegations Regarding Care Provided After Leaving MCSP. Plaintiff was transferred to Kern Valley State Prison (KVSP) in about October 2020. *Id*.; *see also* ECF No. 51 at 49. According to the SAC, within weeks of his arrival at KVSP plaintiff was provided with a walker, back brace, physical therapy, pain medication, and medical attention. *Id*. at 7-8. He was diagnosed with arthritis in his lower spine and given better pain medication. *Id*. at 7. Plaintiff

---

[2] The medication Kirkendall-Cooper provided is sometimes identified in the record as "Tylenol" and elsewhere as acetaminophen. The court notes that Tylenol is a form of acetaminophen. *See* https://www.health.harvard.edu/pain/10-things-you-should-know-about-common-pain-relievers. For the sake of consistency, the court will refer to the medication as acetaminophen.

alleges that his injuries had worsened due to the delay in treatment. *Id*. at 8.

## The Parties' Exhibits

Defendants submit the declarations of Wong, ECF No. 45-4, Kirkendall-Cooper, ECF No. 45-5, and P. Bonacci, a registered nurse who is a consultant program reviewer for the California Correctional Health Care Services (CCHCS), ECF No. 45-6. They also rely on excerpts from plaintiff's deposition, ECF No. 45-3 ("Pltf. Depo."), and plaintiff's medical records pertaining to the care provided at MCSP.

In opposition, plaintiff submits his own declaration and the declarations from two of his inmate co-workers, Clark and Hightower. ECF No. 51 at 33, 48. He submits additional medical records: (1) of his medical history preceding his injury, *id*. at 78-82, 103-121; (2) related to his post-injury treatment at MCSP, *id*. at 96-102, 136, 141, 170-172; and (3) of treatment plaintiff received after his transfer to KVSP, *id*. at 189-192. Plaintiff also submits documentation of the claim he submitted to the State Compensation Insurance Fund (the "workers compensation claim"). *Id*. at 34-46, 142-159, 160-163.

## Plaintiff's Deposition Transcript

The deposition excerpts submitted by defendants (ECF No. 45-3) contain plaintiff's testimony about his interaction with Kirkendall-Cooper, at pages 12, 24-27 of the transcript. In accordance with Local Rule 133(j), defendants lodged a copy of the entire transcript with the court. ECF No. 46. The court has reviewed the full transcript and finds that additional pages of the transcript add context to the excerpted pages and are relevant to analysis of plaintiff's claim against Kirkendall-Cooper for this reason. Accordingly, the court will direct the Clerk to file pages 22, 28, 32, 39, and 40 of the transcript on the public docket of this case.

## Summary Judgment Standard Under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d

376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa County Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

Deliberate Indifference Standard

To succeed on an Eighth Amendment claim predicated on deliberate indifference to a need for medical care, a plaintiff must establish that: (1) she had a serious medical need; and (2) the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical care need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay, or intentional indifference with treatment, or by the way in which care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant will be liable for violating the Eighth Amendment if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

"Mere 'indifference,' 'negligence,' or 'medical malpractice,' will not support an Eighth Amendment claim. *Broughton v. Cutter Laboratories*, 622 F.2d 4548, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). "Rather, to prevail on a claim involving choices of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Further, a plaintiff must have suffered some type of pain or harm that is more than de minimis in order to implicate the Eighth Amendment. *See, e.g.*, *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ("delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference … unless the denial was harmful").

Evidentiary Record And Claim Analysis

**Kirkendall-Cooper**

<u>The Evidentiary Record For The Claim Against Kirkendall-Cooper</u>. The parties broadly agree regarding the events of February 12, 2020. It is undisputed that after plaintiff fell in the kitchen he was taken to the clinic in a wheeled walker belonging to his co-worker Hightower. They agree that plaintiff was verbally belligerent when Kirkendall-Cooper answered at the clinic window, and that Kirkendall-Cooper gave plaintiff two acetaminophen but she did not summon the on-call physician because she assessed that plaintiff's injury did not present an emergency. ECF No. 45-1 at 7; ECF No. 45-3 at 7-8; ECF No. 45-5 at 3-4 ¶¶ 13-14; ECF No. 51 at 13-14, 23-24, 48; ECF No. 52 at 2-3. Plaintiff testifies, and his witness Hightower declares, that plaintiff

informed Kirkendall-Cooper he had a work-related injury, and defendants do not dispute that the work-related nature of plaintiff's injury was known to Kirkendall-Cooper. *See* ECF No. 45-3 at 5 ll. 19-20; *id*. at 6 ll.18-20; ECF No. 51 at 48. Defendants do not dispute that Kirkendall-Cooper told plaintiff he would be scheduled to see someone the next day. ECF No. 45-3 at 6 ll.23-24; *id*. at 48 (Hightower's declaration).

At plaintiff's request, Kirkendall-Cooper gave him two blank forms to fill out: (1) a "7362 form" which is used by inmates to request medical attention; and (2) a "7219 form" which is used to document work-related injuries. ECF No. 45-3 at 6 ll.12-20. Plaintiff filled out the 7362 form and returned it to Kirkendall-Cooper. ECF No. 45-1 at 13; ECF No. 45-4 at 2 ¶ 3; ECF No. 51 at 3 ¶ 3. His testimony is that Kirkendall-Cooper should have documented his injury as work-related on the 7362 form, or perhaps that a properly-completed 7219 form should have been attached to the 7362 form, which would have led to immediate physician attention, likely within 24 hours. ECF No. 51 at 7, 25; Pltf. Depo. at 22 ll.10-18; *id*. at 39 ll.9-15, *id*. at 40 ll.3-4.

Kirkendall-Cooper did not sign the 7362 form that plaintiff filled out and signed on February 12, 2020. ECF No. 45-4 at 7. Instead, another nurse (Cox) signed the form the next day, on February 13. Either Cox or Kirkendall-Cooper made a notation on the form for "RN next day." Plaintiff was indeed seen by nurse Cox on February 14. ECF No. 45-4 at 2 ¶ 4; *id*. at 9-19. Thus, this first 7362 form led to a nursing assessment rather than immediate physician attention. ECF No. 45-6 at 3 ¶¶ 9-10; *id*. at 10. The parties agree that plaintiff submitted three more form 7362 requests for medical attention between February 15 and 25, 2020. ECF No. 45-4 at 2-3 ¶¶ 5-9; *id*. at 21, 24, 38. Nurses (Cox and Klatt) assessed those requests until the final 7362 request apparently led to plaintiff's encounter with physician Wong on February 27, 2020. ECF No. 45-1 at 8-9; ECF No. 45-4 at 41-47.

Plaintiff also filled out the 7219 form and returned it to Kirkendall-Cooper. Pltf. Depo. at 28 ll.10-12. Defendants do not appear to dispute plaintiff's contention that Kirkendall-Cooper did not complete the 7219 form or place it in plaintiff's records. Plaintiff testifies that Kirkendall-Cooper was required to document his work-related injury, especially because he was unable to move about on his own after his fall. Pltf. Depo. at 32 ll.15-20. He contends that Kirkendall-

7

Cooper's omission caused his workers compensation claim to be denied.

<u>Analysis Of The Deliberate Indifference Claim Against Kirkendall-Cooper</u>.  The deliberate indifference claim against Kirkendall-Cooper that survived screening is that she failed to document plaintiff's injuries, which allegedly delayed plaintiff's ability to obtain treatment. ECF No. 25 at 6; *see also Alley v. Saelee*, No. 2:22-cv-0661 DB P, 2023 WL 3582636, at *3, 6 (E.D. Cal. May 22, 2023) (screening in a deliberate indifference claim against a defendant who allegedly denied inmate's request for further medical attention and "failed to document his injuries on a CDCR 7219 Form"); *Downs v. Jiminez*, No. 2:22-cv-01021-AC, 2023 WL 3063335, at *3 (E.D. Cal. Apr. 24, 2023) (deliberate indifference claim stated by allegation that a nurse's failure to document injuries delayed the inmate's ability to obtain treatment).  On summary judgment, there must be evidence that the failure to document adversely affected treatment and caused actual harm. *Bossardet v. Centurion Healthcare*, No. CV-21-00179-TUC-RM, 2024 WL 4534618, at *26 (D. Ariz. Mar. 27, 2024) (a physician's failure to document pain "may have been dishonest and unprofessional" but did not rise to deliberate indifference because it did not alter the course of treatment; a nurse's false report of a patient encounter might have supported a deliberate indifference claim if actual harm had resulted).

Plaintiff argues two adverse consequences followed from Kirkendall-Cooper's documentation omissions: (1) plaintiff had to wait 15 days to see physician Wong, instead of having a visit within 24 hours; and (2) plaintiff's workers compensation claim was denied.[3] As for the first alleged consequence, plaintiff's claim fails because he cannot show that Kirkendall-Cooper's handling of the form 7362, filled out by plaintiff on February 12 to request medical treatment, caused delay in receiving a physician's attention.  Kirkendall-Cooper obviously did place that first 7362 form into the queue for response, because Cox completed the form on February 13 and then made a nursing assessment on February 14.  Cox or Klatt answered plaintiff's next three 7362 requests until plaintiff's encounter with Wong on February 27.  Given

---

[3] As noted above, plaintiff refers to two forms that were provided to him by Kirkendall-Cooper.  One, form 7362, is used to request medical treatment.  The other, form 7219, is used to document that an injury is work related.

8

the four intervening nursing reviews and/or assessments, plaintiff cannot show that Kirkendall-Cooper's handling of the first 7362 form on February 12 was the reason plaintiff did not see Wong until February 27, or that plaintiff suffered any harm because of the way that Kirkendall-Cooper handled the first 7362 form.

As for the second alleged consequence, defendants do not dispute that plaintiff submitted a workers compensation claim that was denied because of "[t]he lack of substantial medical documentation in [your] file outlining the causal relationship between the alleged injury and your employment." ECF No. 51 at 161. Defendants argue the workers compensation denial is irrelevant to plaintiff's Eighth Amendment claim, ECF No. 52 at 2-3 & n.2. Plaintiff, on the other hand, surmises that the workers compensation claim would have allowed him to "receive the medical treatment that he was not receiving from the defendants at the prison." ECF No. 51 at 17. To the extent plaintiff attempts to base his Eighth Amendment deliberate indifference claim on the denial of his workers compensation claim, it fails as a matter of law because the California Workers' Compensation Appeals Board has exclusive authority over claims for the recovery of workers compensation, or any related right or liability. Cal. Labor Code § 5300(a); *see Smith v. Allison*, No. 2:22-cv-0306 KJM AC P, 2022 WL 1271378, at *3 (E.D. Cal. Apr. 28, 2022) (federal district courts have "refused to entertain claims involving worker's compensation benefits, brought by inmate workers who have been injured in prison"). The court also notes that plaintiff has not alleged compliance with the California Government Claims Act. *See Terry v. Smith*, No. 13-cv-01227-EMC, 2016 WL 7033738, at *14 (N.D. Cal. Dec. 2, 2016) ("a claim of intentional concealment or fraud in the preparation of [a] worker's compensation claim form that might not fall within the exclusive remedy of the worker's compensation scheme … must be dismissed because [plaintiff] indisputably failed to comply with the California Government Claims Act, which requires presentation of the claim to the California Victim Compensation and Government Claims Board" within six months of accrual of the cause of action).

To be sure, "[t]he availability of a remedy under state workers' compensation law does not preclude a § 1983 claim" that is predicated on deliberate indifference to a plaintiff's safety that results in serious injury, *see, e.g.*, *Morgan v. Morgensen*, 465 F.3d 1041, 1044 (9th Cir. 2006)

1  (citation omitted).  But plaintiff here alleges that Kirkendall-Cooper's failure to assist him in
2  pursuing a workers compensation claim by not properly completing form 7219 to document that
3  the injury was work related is sufficient to show an Eighth Amendment violation.  The failure of
4  an employer to properly document that an injury was work-related may have relevance to the
5  merits of plaintiff's worker's compensation claim, but plaintiff has not shown that Kirkendall-
6  Cooper acted with deliberate indifference to plaintiff's serious medical needs in not completing
7  that documentation relevant to a request for treatment.   Rather, Kirkendall-Cooper had plaintiff
8  complete and sign the form 7362, which is used to document a request medical treatment, and
9  placed that documentation in the queue for further action, and the next day nurse Cox signed the
10 form and subsequently made a nursing assessment.

11 Plaintiff has not shown any genuine dispute as to whether Kirkendall-Cooper caused any
12 material delay or denial of treatment by failing to properly document plaintiff's injury and/or
13 need for medical attention.  For this reason, defendants' motion for summary judgment must be
14 granted as to the deliberate indifference claim against Kirkendall-Cooper.

15 **Wong**

16 <u>The Evidentiary Record For The Claim Against Wong</u>.  Preliminarily, the parties agree
17 that plaintiff had some degree of mobility impairment at the time of his injury and was using a
18 cane while working in the kitchen performing such tasks as carrying pots and pans.  ECF No. 45-
19 1 at 7; *see also* ECF No. 51 at 14 (plaintiff used his cane to knock on the clinic door).  Plaintiff's
20 mobility impairment was apparently due to a vascular deformation of his right foot, and which
21 had obvious effects on his gait.  ECF No. 51 at 27; *id.* at 184, 186 (medical providers at KVSP
22 assessed that plaintiff's right foot deformity throws off his gait, requires that he use a walker, and
23 causes a lot of pain).  He had had surgery for this condition in 2008, and in 2011 and 2012 he had
24 been limited to sedentary jobs.  *Id*. at 78-82, 103-121.  Plaintiff was apparently cleared for kitchen
25 work in 2019.  *Id*. at 17, 84-87.

26 Wong declares that on February 27, 2020 he saw plaintiff for his complaint of "right hip
27 pain" and that the right hip appeared normal and X-rays later showed no evidence of fracture of
28 osteonecrosis, and that bone mineralization was within normal limits.  ECF No. 45-4 at 3 ¶ 10.

Wong's declaration consistently describes plaintiff's medical condition as right hip pain, but all four of the 7362 requests plaintiff submitted in February 2020 stated that he had injured his back; three of the 7362 requests stated that plaintiff had fallen while working in the kitchen and one 7362 request mentions plaintiff's mobility limitations; only two of these 7362 requests also mention the right side of plaintiff's hip. *Id*. at 7, 21, 24, 38. Wong's declaration does not acknowledge plaintiff's other complaints. The parties agree that Wong ordered an X-ray of the right hip, acetaminophen, and a seven day lay-in.

The parties' principal dispute regarding the February 27 encounter with Wong is that plaintiff claims Wong failed to document his requests for physical therapy, back brace,[4] or a wheelchair. ECF No. 45-1 at 9; ECF No. 45-4 at 3-4 ¶ 10; ECF No. 51 at 6-7. Wong declares that plaintiff did not make these requests, but plaintiff points out that he had been seeking durable medical equipment appliances for some time and he maintains he therefore took this opportunity to renew his requests. ECF No. 51 at 7. Whether or not plaintiff did make such requests is obviously not a question that can be resolved on summary judgment. Plaintiff claims to have also questioned Wong about the removal of the previous work restriction that had prohibited kitchen work due to plaintiff's mobility issues. *Id*. at 17.

Wong does not dispute that he had no further encounters with plaintiff after February 27. Yet the parties agree that plaintiff submitted two additional 7362 requests for medical attention in March 2020 in which he complained of pain including "severe chronic pain in my right foot and lower back," and that he was seen by a nurse (Omari) who referred him to Wong for pain medications although apparently there was no follow-up on the referral. ECF No. 45-4 at 4 ¶¶ 11-15; *id*. at 50-56. On April 17, 2020, a physical therapist (Negrete) recommended continued use of a McKesson abdominal binder.[5] *Id*. at 4 ¶ 16; *id*. at 65. Negrete did not provide actual physical therapy, only a consultation. Plaintiff submits documentation of an additional

---

[4] Plaintiff agrees he did have a back brace, but it was old and worn out. ECF No. 51 at 28.

[5] This appears to be a wrap-around compression panel designed to support the abdomen. *See* https://mms.mckesson.com/product/890528/McKesson-Brand-925.

11

consultation with Negrete on June 24, 2020. ECF No. 51 at 137. Plaintiff complained to Negrete on June 24 that his "'back hurts, can hardly walk, can't stand up straight,'" and Negrete opined that plaintiff's symptoms were "consistent with Lumbar Extension Syndrome." *Id*.; *see also* https://my.clevelandclinic.org/health/articles/22396-lumbar-spine (the lumbar spine is in the lower back). Negrete's recommendation was that plaintiff "would likely benefit from having a rolling walker for ambulation purposes." *Id*. As noted, plaintiff did not receive a walker until after he left MCSP. Plaintiff claims that Negrete also recommended a back brace, but plaintiff did not receive a new back brace from MCSP. *Id*. at 29. Wong does not indicate that he reviewed the two 7362 requests submitted in March 2020 or Negrete's recommendations made in April 2020 and June 2020, even though Wong maintains that he "did not ignore or fail to provide Plaintiff with the medically necessary treatment for the conditions that are the subject of this lawsuit," and that the care plaintiff received complied with CCHCS Care Guidelines. ECF No. 45-4 at 4-5 ¶¶ 11-18.

Wong also does not dispute plaintiff's evidence regarding the medical attention plaintiff received after his arrival at KVSP in October 2020. Plaintiff was issued a back brace and walker shortly after he was transferred. ECF No. 51 at 29-30, 165-169; *see also id*. at 184 (as of November 13, 2020 plaintiff "requires a walker for ambulatory stability"). Plaintiff's medical provider at KVSP declined plaintiff's request for gabapentin, but did prescribe suboxone instead of acetaminophen. *Id*. at 186. Plaintiff's primary care physician at KVSP also prescribed physical therapy and ordered a more comprehensive set of X-rays than those ordered by Wong. *Id*. at 30. Plaintiff maintains the physical therapy he received at KVSP was immediately helpful in reducing pain and increasing his mobility. *Id*. Plaintiff claims the more comprehensive X-rays showed that plaintiff's lower back was in worse condition than had been diagnosed based on Wong's X-ray of the right hip and pelvis, but the medical and radiology records submitted by plaintiff do not unequivocally support his assertion regarding the X-rays. *Id*. A KVSP assessment apparently conducted in June 2021 was that an X-ray of plaintiff's back showed "moderate osteoarthritis …. This would not be unexpected in a 57-year-old. This should not be disabling." *Id*. at 179. Plaintiff was nevertheless given a walker by KVSP officials, indicating

such a need regardless of the X-rays.

<u>Analysis Of The Deliberate Indifference Claim Against Wong</u>.  The screened-in deliberate indifference claim against Wong alleges that he "was aware of plaintiff's pain and inability to walk without a walker, and with reckless disregard for plaintiff's deteriorating condition, denied him basic medical necessities, including pain medication, physical therapy, and a walking apparatus, as well as any follow-up care after his February 27, 2020 visit."  ECF No. 25 at 5-6 (footnote omitted).  Defendants' motion addresses some, but not all, of the issues identified in this screened-in deliberate indifference claim.

Wong makes the incomplete argument that he was not deliberately indifferent to plaintiff's complaint of "right hip pain."  ECF No. 45-1 at 14-15.  On the evidentiary record before the court, plaintiff's medical condition was not limited to right hip pain, and his deliberate indifference claim is clearly premised on the larger context of his injury having occurred while he worked in the kitchen with some degree of mobility impairment with only a cane for mobility assistance, and that his injury affected his back as well as his right hip.  The four 7362 requests plaintiff submitted in February 2020 all stated that plaintiff had thrown out his back (three mentioned this happened while he worked in the kitchen), but only two of the requests also mention the right side of plaintiff's hip.  ECF No. 45-4 at 7, 21, 24, 38.  One of the 7362 requests plaintiff submitted in March 2020, which apparently received no response from Wong, asked for pain medication because plaintiff was experiencing "severe chronic pain in my right foot and lower back."  *Id*. at 56.  Nothing in the record shows that Wong addressed plaintiff's right foot and lower back pain, or the work-related nature of his injury, or whether he might need additional assistive mobility equipment or physical therapy.

As for the dispute about whether plaintiff requested physical therapy, back brace, or a wheelchair during the February 27 visit with Wong, plaintiff has shown a plausible factual issue as to whether he made these requests.  The question whether Wong failed to accurately document such requests, standing alone, may not support an independent Eighth Amendment claim, but coupled with a course of treatment that was medically inappropriate would suffice.  Here, a failure to document plaintiff's requests has relevance to plaintiff's claim of deliberate indifference

13

only if there is also a triable issue whether Wong's course of treatment was medically inappropriate.

Aside from the documentation question, and regardless whether or not plaintiff requested physical therapy, back brace, or a wheelchair from Wong during their February 27 visit, there is evidence that such considerations were suggested by the circumstances of plaintiff's injury and his medical history including the vascular deformation of his right foot that affected his mobility. Medical providers at KVSP assessed that plaintiff's right foot deformity throws off his gait, requires that he use a walker, and causes a lot of pain. ECF No. 51 at 184, 186. At times in the past, plaintiff had been limited to sedentary jobs, yet as of February 12, 2020 he was assigned to the scullery job and his only assistive device was a cane. This evidence demonstrates a triable factual issue whether it was medically inappropriate to fail to provide additional mobility equipment or other medical necessities after plaintiff's fall at work, especially in anticipation of his return to the scullery job.

Wong's declaration that plaintiff "received ongoing medical evaluations and treatment regarding his complaint of right hip pain" is sufficiently disputed to create another genuine factual issue. *See* ECF No. 45-4 at 5 ¶ 17. Wong himself does not appear to have provided further care after the February 27, 2020 visit. He does not claim to have reviewed or responded to the two 7362 requests plaintiff made in March 2020, or to have reviewed or acted on Negrete's consultations in April 2020 and June 2020, including Negrete's recommendation for a rolling walker. *Id*. at 4-5; *see* ECF No. 51 at 137. Plaintiff received physical therapy, a new back brace, and a walker only after he transferred to KVSP in October 2020, more than eight months after his injury. *See Morris v. Mitchell*, No. 3:23-cv-00042-ART-CSD, 2025 WL 732356, at *8-9 (D. Nev. Mar. 6, 2025) (a delay in providing necessary medical equipment causing further injury such as increased pain, can amount to deliberate indifference, and "a reasonable juror could find that Plaintiff needed a working mobility device").

Defendants do address the pain medication Wong provided to plaintiff. ECF No. 45-1 at 14; ECF No. 45-4 at 5 ¶ 17. Like Wong, plaintiff's medical provider at KVSP also declined plaintiff's request for gabapentin, but the KVSP officials did prescribe suboxone instead of

acetaminophen. ECF No. 51 at 186. Plaintiff's evidence establishes a genuine factual issue about whether Wong's treatment of plaintiff's pain was medically inappropriate.

The question then becomes whether the factual issues surrounding Wong's treatment of plaintiff's condition might support a finding of deliberate indifference – *i.e.*, whether the treatment was medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to plaintiff's health. *Toguchi*, 391 F.3d at 1058. Hewing to *Toguchi*'s description of the deliberate indifference standard,[6] plaintiff has shown genuine issues of material fact that create more than a metaphysical doubt whether Wong's care was deliberately indifferent. Construing in plaintiff's favor all reasonable inferences that are supported by the evidence of record, Wong's motion for summary judgment must be denied because there remain genuine issues of material fact as to whether Wong was deliberately indifferent in the care that Wong provided to plaintiff, including failing to provide adequate pain medication, physical therapy, a walking apparatus, and follow-up care.

## Qualified Immunity

Defendants argue they are entitled to qualified immunity because: (1) there has been no constitutional violation; and (2) even if a constitutional violation occurred, reasonable medical officials would not have understood at the time that the care provided to plaintiff was constitutionally deficient. ECF No. 45-1 at 15-16; ECF No. 52 at 6 (citing *Harlow v. Fitzgerald*,

---

[6] Deliberate indifference is often described as more than negligence or even gross negligence. *See, e.g., Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1080 (9th Cir. 2013); *Atayde v. Napa State Hospital*, No. 1:16-cv-00398-DAD-SAB, 2022 WL 2392619, at *4-5 (E.D. Cal. July 1, 2022). According to the California Supreme Court, gross negligence is either 1) a want of even scant care, or 2) an extreme departure from the ordinary standard of conduct. *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754, 62 Cal. Rptr. 3d 527, 161 P.3d 1095. Also, gross negligence "falls short of a reckless disregard of consequences, and differs from ordinary negligence only in degree, and not in kind." *Gore v. Board of Medical Quality Assuran*ce (1980) 110 Cal. App. 3d 184, 197, 167 Cal. Rptr. 881 (citations and internal quotation marks omitted).
    At least one court has noted a lack of clarity about how the deliberate indifference standard differs from gross negligence. *Dat Thank Luong v. Napa State Hospital*, 411 F. Supp. 3d 615, 635 (N.D. Cal. 2019) (concluding that "[f]or purposes of the instant case, there may not be any material difference between the two standards as a practical matter"), *reversed in part on other grounds and appeal dismissed in part by Luong v. Napa State Hospital*, 831 F. App'x 855 (9th Cir. 2020); *see also Ocampo v. Corizon, LLC*, No. 20-35990, 2022 WL 229093, at *3 (9th Cir. Jan. 25, 2022) (concluding that any difference between gross negligence as defined in Idaho's tort claims statute and the Eighth Amendment deliberate indifference standard was immaterial in the circumstances of that case).

457 U.S. 800, 818 (1982)).

Qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted). A defendant is entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2010). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id*. at 743.

Showing the unlawfulness of the conduct was "clearly established" requires a showing that "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id*. (citation and internal quotation marks omitted); *see also Kisela v. Hughes*, 540 U.S. 100, 105 (2018) (per curiam) ("An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" (citation omitted)). "While there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the [conduct] 'beyond debate.'" *Villanueva v. California*, 986 F.3d 1158, 1165 (9th Cir. 2021) (alteration in original) (quoting *Wesby v. District of Columbia*, 583 U.S. 48, 64, 138 S. Ct. 577, 590 (2018)).

The Supreme Court has warned courts not to define clearly established law "at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Kisela*, 540 U.S. at 104. "[T]he farther afield existing precedent lies from the case under review, the more likely it will be that the officials' acts will fall within that vast zone of conduct that is perhaps regrettable but is at least arguably constitutional." *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016). But "officials can still be on notice that their conduct violated established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (explaining that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not]

16

previously been held unlawful'") (alteration in original) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Whether such a clearly established right exists is "a question of law" for the court to decide. *Morales v. Fry*, 873 F.3d 817, 819 (9th Cir. 2017)).

The court does not reach Kirkendall-Cooper's qualified immunity argument because it is recommending that her motion for summary judgment be granted on its merits. Defendants have not shown that Wong is entitled to qualified immunity because they have not shown that a reasonable physician would not have understood the need to address plaintiff's more extensive medical needs including his right foot and back pain, his mobility impairment, his need for additional assistive devices, and the work-related nature of his injury. *See Stewart v. Aranas*, 32 F.4th 1192, 1195-1196 (9th Cir. 2022) (prison officials who adopted "wait and see" treatment plan that was clearly ineffective were not entitled to qualified immunity; effective treatment was immediately provided upon transfer to a different facility and this was not a mere disagreement about appropriate care); *see also Dennis v. Kernan*, No. 2:16-cv-00542 DAD AC P, 2023 WL 2839402, at *12 (E.D. Cal. Apr. 7, 2023) (nurse practitioner not entitled to qualified immunity because no reasonable person would have believed it was constitutional to minimize or fail to record plaintiff's symptoms which may have interfered with treatment or prevented surgery). For all these reasons, Wong's argument that he is entitled to qualified immunity must be denied.

## Order and Recommendation

Accordingly, it is ORDERED that the Clerk shall docket the following pages of the transcript of plaintiff's deposition, lodged as noticed at ECF No. 46, as a separate docket entry: Pages 22, 28, 32, 39, and 40.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 45) be GRANTED IN PART AND DENIED IN PART and that:

1) summary judgment be entered as to plaintiff's claim against Kirkendall-Cooper; and

2) summary judgment be denied as to plaintiff's claim against Wong.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 95 F.2d 1153 (9th Cir. 1991).

Dated: May 29, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE